(71 N. W. Rep. 544.)

---

## ERASMUS B. ANGELL *vs.* JOHN H. EGGER.

Opinion filed April 23rd, 1897.

**Contract Title to Crops.**

Whether an agreement constitutes a lease or a mere hiring of the person who is to work the land as a servant of the owner thereof, it is lawful for the parties to contract with reference to the title to the produce of the land, and such contract will be enforced according to its terms.

**Construction of Contract—Replevin—Judgment.**

Contract set forth in the opinion construed, and *held* to vest in the owner of the land the title to all crops grown thereon until a division thereof by the owner. Until such division, the owner may maintain replevin to recover possession of the same. The remedy of the other party to the agreement for an unjust refusal by the owner to make such division is in the courts; but he cannot sue for conversion, or replevy the crops, or any portion thereof. But if he is in possession, and the owner brings replevin, the judgment, while it should be for the full amount of the property, yet, as in replevin suits the issues are settled upon equitable principles, the judgment in the alternative for value should be not for the full value of the property, but for the sum that is justly due the owner under the contract for his share of the crops, and for advances due him, when he has a right under the contract to retain sufficient of the other party's share of the property to secure repayment of such advances.

Appeal from District Court, Richland County, *Lauder*, J.

Action by Erasmus B. Angell against John H. Egger. Judgment for defendant, and plaintiff appeals.

Reversed.

*C. L. Bradley*, for appellant.

By contract of the parties the title of all crops raised was in plaintiff. This was a lawful and binding stipulation. *Harkness* v. *Russell*, 118 U. S. 663; *Van Hoozer* v. *Cory*, 34 Barb. 9; *Lewis* v. *Lyman*, 22 Pick 437; *Smith* v. *Atkins*, 18 Vt. 461; *Edson* v. *Colburn*,

28 Vt. 631; *Griswold* v. *Cook*, 46 Conn. 198; *Andrews* v. *Newcomb*, 32 N. J. 413; *Wentworth* v. *Miller*, 53 Cal. 9; *Gray* v. *Robinson*, 33 Pac. Rep. 712; *Consolidated L. & I. Co.* v. *Hawley*, 63 N. W. Rep. 904; *Hammock* v. *Creekmore*, 3 S. W. Rep. 180; *Meachem* v. *Herndon*, 6 S. W. Rep. 741. The cases seemingly opposed are upon examination controlled by various facts. *McCaffrey* v. *Woodin*, 65 N. Y. 459; *Johnson* v. *Crofoot*, 53 Barb. 574; *Thomas* v. *Bacon*, 41 Hun. 88; *Betsinger* v. *Schuyler*, 46 Hun. 349; *Briggs* v. *Austin*, 8 N. Y. Supp. 786; *Hare* v. *Follett*, 17 N. Y. Supp 559.

*S. H. Snyder*, for respondent.

The recitals of lease operate to give Egger an interest in the land and in the crop raised. *Bowers* v. *Graves*, 66 N. W. Rep. 931; *Walker* v. *Files*, 24 Pick. 191; *Tyler* v. *Bradley*, 39 N. Y. 129. Such an agreement not having been filed as a chattel mortgage it was invalid against an execution creditor who had levied upon the undivided interest of the tenant. *Hare* v. *Follett*, 17 N. Y. Supp. 558; *Thomas* v. *Bacon*, 34 Hun. 88; *Smith* v. *Taber*, 46 Hun. 313; *Betsinger* v. *Schuyler*, 46 Hun. 349; *Moen* v. *Lillestal*, 65 N. W. Rep. 695, 5 N. D. 327. If the relation of landlord and tenent existed replevin will not lie on the part of Angell the lessor before division. Cobbey on Replevin 19. Because the parties are tenents in common until division. Cobbey on Replevin 230; *Barnes* v. *Bartlett*, 15 Pick, 71; *Bohlins* v. *Arthurs*, 115 U. S. 482. By division of the grain plaintiff divested himself of title. *Lloyd* v. *Powers*, 4 Dak. 62, 22 N. W. Rep. 492.

CORLISS, C. J. This litigation involves the ownership of a crop of flax. It was raised upon the plaintiff's farm in the year 1895. In 1893, plaintiff and defendant entered into the following agreement: "This agreement, made in duplicate this 10th day of September, A. D. 1893, by and between John H. Egger, of Abercrombie, N. D., party of the first part, and E. B. Angell, of Fargo, N. D., owner of the real estate hereinafter described, party of the second part, witnesseth: That the party of the first part hereby agrees to and with the party of the second part, for the consider-

ation hereinafter named, to well and faithfully till and farm during the season of farming during the years 1894, 1895, 1896, 1897, and 1898, in a good and husbandlike manner, and according to the usual course of husbandry, the following described premises and real estate, situate in the County of Richland and State of North Dakota, viz: The north one hundred (N. 100) acres of the southeast quarter (S. E. ¼) of section number twenty-one (21), in township number one hundred and thirty-four (134), of range number forty-eight (48); and the said party of the first part hereby further agrees to sow and plant the said land in such crops as the party of the second part shall direct. Said first party agrees to furnish all seed grain each year for said land, and said seed is to be free from all foul seeds, and first-class seed in every respect. The party of the first part also agrees to furnish at his own cost and expense all proper and convenient tools, utensils, farm implements, and machinery to carry on and cultivate said farm during said seasons, and to furnish and provide all proper assistance and hired help in and about the cultivation and management of said farm, and to farm and cultivate the said land to the best advantage and according to his best skill and judgment, and to maintain and keep up the fences so as to protect said crops from injury and waste, and to watch, care for, and protect the same, and to protect the fruit and shade trees thereon, and to cut no green trees, and to commit no waste or damage on said real estate, and to suffer none to be done, and to crop and cultivate said lands, and harvest, thresh, and secure the crops grown thereon in a farmerlike style, and in the best possible manner, during said seasons; and, after taking off the crops, to plow immediately in a good and proper manner so much and such parts of said farm suitable for a succeeding crop as shall be plowed at the time the party of the first part takes possession thereof, and to keep and maintain in good repair all structures, stables, cribs, fences, and improvements on said farm, and generally do and perform all proper and ordinary work, labor, care, and skill requisite, usual, or necessary to work and crop said

premises in a proper manner and style, and to the best interests of the party of the second part; and further agrees not to remove any straw or manure from said farm, and not to sell or remove, or suffer to be sold or removed, any of the produce of said farm or premises, of any kind, character or description, until the division thereof, without the written consent of the party of the second part; and until such division the title and possession of all grain, hay, crops, and produce raised, grown, or produced on said premises shall be and remain in the party of the second part, and said party of the second part has the right to take and hold enough of the crops that would, on the division of said crops, belong to the party of the first part to repay any and all advances made to him by the party of the second part, and interest at 12 per cent. per annum, and also to pay all indebtedness due said party of the second part by said party of the first part, if any there be. It is also agreed that, in case said party of the first part neglects or fails to perform any of the conditions and terms of this contract on his part to be done or performed, then said party of the second part is hereby authorized and empowered to enter upon the said premises, and take full and absolute possession of the same, and he may do and perform all things ageed to be done by party of the first part remaining undone, and to retain or sell sufficient of the crops raised on said premises that would otherwise belong to said first party, if he had performed the conditions hereof, to pay and satisfy all costs and expenses of every kind incurred in performing said contract, with interest at ———— per cent. per annum; and the residue remaining, if any, of said crops, shall belong to said party of the first part, after all conditions hereof are fulfilled. In consideration of the faithful and diligent performance of all the stipulations of this contract by the party of the first part, the party of the second part agrees, upon reasonable request thereafter made, to give and deliver on said farm the three-fourths (¾) of all grains, vegetables, so raised and secured upon said farm during said seasons to the party of the first part. Said party of the first part agrees to deliver to

said party of the second part one-fourth (¼) of all the grain raised each and every year during the life of this contract free of all expense, in the cars, and agrees to keep the said land free of all foul weeds, as mustard, wild oats, Russian thistle, etc. Should the party of the first part fail in any one of his agreements herewith made at any season, the party of the second part shall have the right to cancel and determine this lease at the end of the crop season of that year. This lease is made subject to a sale of the land at any time, but the first party may have the right to crop the land for that season should he have already put the crop in before he was notified that the land is sold. He shall also be paid for any plowing he may have done for the succeeding year."

The property in question constitutes the entire crop of flax raised upon the land in 1895. Defendant sold to his father his interest in this crop, and we will assume, for the purposes of this decision, that his father was a purchaser in good faith, for value, and without notice of the terms of the agreement between plaintiff and defendant. Defendant justifies his possession as agent for his father, claiming that his father obtained by the purchase a good title to three-fourths of the flax. The father has offered to deliver and has delivered to plaintiff one-fourth of such crop. It appears that the defendant was indebted to the plaintiff at the time of this sale, and still is indebted to him, in several sums of money for advances made to defendant, for lumber purchased for him by plaintiff, and for seed furnished him by plaintiff for the crop of 1895. The defendant's father has offered to pay the indebtedness for the seed, but refuses to pay the other claims. The plaintiff insists upon his right, under the agreement, to hold the possession of and title to the flax until division of the same. His real object, doubtless, is ultimately to retain only enough to make good his share, and secure repayment of the advances made by him to the defendant; but he claims a right under the contract to the title to and the possession of the whole crop until division thereof. The trial court construed the agreement as constituting a chattel mortgage with respect to the three-fourths of the crop,

which would come to the defendant were there no advances to be repaid by him; and therefore charged the jury that, if the father of the defendant was a purchaser of defendant's interest for value, in good faith, and without notice, the instrument, so far as it gave the plaintiff a lien upon defendant's share of the crop to secure a division, was void as to him, the father. To this instruction plaintiff excepted, and it is the assignment of error based upon this ruling of the court which presents the point on which we will dispose of the case. Whether the agreement between plaintiff and defendant created the relation of landlord and tenant is not material. We may safely assume it to be a lease, and certain provisions of it seem to be inconsistent with any other interpretation of it. But while it is true that one who has an interest as lessee in real proporty is *prima facie* entitled to the crops raised thereon during the life of the lease, yet the parties may, by express agreement, provide that the title to certain crops, or to a certain share of all crops, or to all crops until a certain period, or to all crops absolutely, shall vest in the lessor from the time they come into existence. He who owns the land may certainly reserve to himself any interest therein, or in the produce thereof, he sees fit to reserve, provided the other party to the contract assents to such reservation. There is nothing in the law to prevent a lessee from agreeing that he shall own none of the crops. He may even make an improvident agreement, and give the lessor the title to everything raised on the land as a consideration for the right to occupy it. So he may agree that the title to all crops shall remain in the lessor until the happening of a certain event. Such contracts are not opposed to any principle of law, and should be enforced according to their terms. The agreement here involved provides that "in consideration of the faithful and diligent performance of all the stipulations of this contract by the party of the first part, the party of the second part agrees, upon reasonable request thereafter made, to give and deliver on said farm the three-fourths (¾) of all grains, vegetables, so raised and secured upon said farm during said seasons to the party of

the first part," and also that until the division of the crops "the title and possession of all grain, hay, crops and produce raised, grown, or produced on said premises shall be and remain in the party of the second part" (the plaintiff). Until such time as the plaintiff should turn over to the defendant the share of the crops coming to him under the contract, the legal title would remain in the plaintiff. It may be true that the defendant would have an equitable interest therein, and could enforce his rights by a suit in equity. But he could not maintain replevin, or sue for conversion. The lessee has agreed that his title to his share of the crop should not vest in him until the act of a division was performed by the lessor. The unjust refusal of the lessor to perform this act would not make the lessee the owner of the legal title, but would only give him a cause of action to enforce his rights under the agreement. True it is that, when the contract is silent touching the title to the product of the land, it becomes necessary to ascertain the exact character of the agreement so far as the land is concerned; for upon the answer to this inquiry depends, in such a case, the issue of title to the crops. If the contract constitutes a lease, or, in other words, a transfer of an interest in the land for a specific period, it follows that the title to all crops is in the lessee, for a grant carries with it as an incident the right to the full enjoyment of the thing granted. One who buys the right to use real property for a certain term secures all the rights of the owner to make profit out of it by its reasonable use. If, on the other hand, the agreement does not vest any interest in the land in the one who is to farm it, but he is a mere servant of the owner, the title to all crops is, in the absence of an agreement to the contrary, in the owner. The other party to the contract, not being invested with any interest in the real property, cannot, without express agreement to that effect, have any interest in the produce thereof. But whether the contract is a lease, or constitues a mere hiring of the person who works the land, it is lawful for the parties to agree touching the title to those things which issue from the land. The character of the contract becomes

important only when it is silent on the subject of title. Of course, it may be an important factor in solving the problem of the true construction of the agreement on the subject of title to the annual crops. But, when once that question is settled, it is immaterial whether an interest in the land has or has not been transferred to the one whose duty it is, under the contract, to farm the land. On the undisputed facts we think that the plaintiff should have had a verdict. Not only did the court err in its instructions to the jury, but it was its duty under the law to direct a verdict for the plaintiff. Numerous authorities support our ruling in this case. *Smith* v. *Aikins*, 18 Vt. 461; *Esdon* v. *Colburn*, 28 Vt. 632; *Andrew* v. *Newcomb*, 32 N. Y. 417; *Irrigation Co.* v. *Hawley*, 63 N. W. Rep. 904; *Moulton* v. *Robinson*, 27 N. H. 550; *Lewis* v. *Lyman*, 22 Pick. 437; *Howell* v. *Foster*, 65 Cal. 169, 3 Pac. Rep. 647; *Griswold* v. *Cook*, 46 Conn. 198; *Taylor* v. *Bradley*, 39 N. Y. 129; *Lloyd* v. *Powers*, 4 Dak. 62, 22 N. W. Rep. 492. See, also, *Meacham* v. *Herndon*, 6 S. W. Rep. 741. As in replevin suits the issues are adjusted upon equitable principles, the plaintiff, while entitled to a judgment that he recover possession of all the property in controversy, should not have an alternative judgment for its full value, but only for the amount due him for advances, the one-fourth of the crop having been delivered to and accepted by him pending the action. *Lovejoy* v. *Bank*, 5 N. D. 623, 67 N. W. Rep. 956. But, in view of the peculiar facts in this case, the appellant will recover no costs in this court. Without going into detail, we are clear that under the circumstances of the case it would be inequitable for appellant to ask the defendant to pay the costs of this appeal. As the costs are discretionary when a new trial is ordered (§ 5581, Rev. Codes), we deem it our duty to hold that appellant cannot recover costs on this appeal.

The judgment is reversed and a new trial ordered. All concur.

WALLIN, J., (concurring). Previous to the institution of this action there had been no attempt to divide the crop in controversy, and therefore, under the contract, the plaintiff was the owner of the crop, and had an absolute right to the possession of

the same, and the whole thereof. The decision of the case must turn upon the state of facts existing when the action was commenced. Had the division of the crop been made prior to the institution of the action, and if the action had been brought for the share of the crop belonging to the defendant for the purpose of holding such share as security for advances, and for no other purpose, I should have held that the plaintiff could not recover, in view of the assumption made in the opinion that the defendant's father was a good-faith purchaser of such share, — the contract not having been filed for record as a mortgage. I am authorized to state that my associates fully agree with me in these views.

(71 N. W. Rep. 547.)