(84 N. W. Rep. 558.)

---

## M. E. Hawk *vs.* A. Konouzki, *et al.*

Opinion filed November 26, 1900.

### Chattel Mortgage—Foreclosure—Claims of Third Party—Evidence.

This action is brought to foreclose certain chattel mortgages given by the defendant upon his prospective one-half interest in certain crops to be grown and raised by him upon premises described in the complaint. The intervener Mathwig filed a complaint alleging ownership in herself of the wheat in controversy. A warrant was issued under section 5898, Rev. Codes 1899, and the sheriff, under the warrant, seized a quantity of wheat stored in a granary located upon premises then occupied by the defendant. The trial court, after a trial without a jury, entered a judgment of foreclosure, and directed therein that said wheat should be sold by the sheriff, and

that the proceeds of the sale should be divided among the several holders of the chattel mortgages involved. Said intervener appealed from said judgment, and demanded a retrial of all the issues in this court. After a retrial in this court, it is *held* that the evidence in the record fails to show that the mortgagor, the defendant, ever had any title to or interest in the wheat in controversy; and, further, that the evidence affirmatively shows that said wheat was at all times the property of said intervener.

**Judgment Reversed.**

Accordingly, it is further *held* that said judgment was erroneously entered, and must be reversed, and the action dismissed, with costs.

Appeal from District Court, Cass County; *Pollock, J.*

Action by M. E. Hawk against August Konouzki. R. P. Sherman, as president of the State Bank of Tower City, and Emma L. M. Mathwig intervene. Judgment for plaintiff, and Mathwig appeals.

Reversed.

*Tilly & McLeod,* for appellant.

The defendant, Konouzki, by his contract of lease, agreed that the title and ownership of the crops to be raised on the land rented should remain in the landlord until the conditions agreed to be performed by him were fully performed. He, therefore, had no interest whatever in the crop until he performed his part of the contract and a division of the crop made in accordance with its terms. *Angell* v. *Egger,* 6 N. D. 391, 71 N. W. Rep. 47; *Lloyd* v. *Powers,* 4 Dak. 62, 22 N. W. Rep. 492; *Consolidated L. & T. Co.* v. *Hawley,* 63 N. W. Rep. 904; *Lewis* v. *Lyman,* 39 Mass. 437; *Taylor* v. *Bradley,* 39 N. Y. 129; *Meacham* v. *Herndon,* 6 S. W. Rep. 741; *Prouty* v. *Barlow,* 76 N. W. Rep. 946. It was not proven in this case that the property taken was the identical property covered by the mortgage. *Cadwell* v. *Prey,* 41 Mich. 307; *Pinkstaff* v. *Cochran,* 58 Ill. App. 72; *Union Bank* v. *First Nat. Bank,* 2 Mo. App. 990; *Webb* v. *Phillips,* 80 Fed. Rep. 954; *Cumane* v. *Scheidel,* 70 Conn. 13.

*Pollock & Scott,* for respondent.

The intervener, Mathwig, should be treated as a mortgagee because of the contracts for lien contained in the lease. The lease should be construed as a whole. § § 4701, 4703, Rev. Codes; 1 Cobbey on Chattel Mortgages, § 9; *Coe* v. *Cassady,* 72 N. Y. 137; *Cooper* v. *Brock,* 2 N. W. Rep. 600; *Despard* v. *Walbridge,* 50 N. Y. 374; *O'Neill* v. *Murray,* 50 N. W. Rep. 619.

WALLIN, J. The relief sought by the plaintiff in this action is the foreclosure of certain chattel mortgages, and the procedure below was governed by Rev. Codes 1899, § § 5897-5903. In the District Court the litigation resulted in a judgment in favor of the holders of the several chattel mortgages involved, and was adverse to the interests of Emma L. M. Mathwig, intervener, who has

appealed from the judgment to this court, and demanded a retrial here of the entire case. The evidence and facts controlling the controversy are, in the main, undisputed, and for the purposes of this opinion it will be necessary to set out only an outline of the facts and evidence which we deem essential to a determination of the case. It is conceded that the intervener Emma L. M. Mathwig was, during the time in question, the owner of all the land involved in the action; also that such land consisted of several parcels of farm lands, located, respectively, in Cass county and in the county of Barnes. On March 17, 1898, said intervener leased all of her lands to the defendant, August Konouzki, for the term of one year. Said lease was reduced to writing, and signed by both parties; but the same was not recorded, nor was the same ever filed for record as a chattel mortgage. The most important features of the lease contract may be stated as follows: The lessee, Konouzki, who is described in the instrument as party of the second party, agreed on his part to pay as rent for the premises one-half of all the grain raised thereon, except as to a tract of about 50 acres; and as to such tract he agreed to pay a cash rental of $1.25 per acre. He further agreed to sow wheat, oats, and flax upon certain designated portions of the premises, and to summerfallow a designated portion, and to plow back in the fall of the year all the cultivated parts of the premises. He further agreed to furnish all necessary farming utensils and perform all of the labor necessarily involved in raising the crops agreed to be sown and grown and doing the work in a workmanlike manner. He further agreed to draw out and spread the manure then upon the land, and agreed to deliver one-half of the said grain to an elevator or the cars, and do this free of expense to the party of the first part. There was a certain section of said land which was rented by said intervener from the state at a cash rental, and which was fenced and used as a pasture. In consideration of the use of this land by him the tenant agreed to pay the rental to the state and pay the landowner one-half of the money collected for pasturing the stock of others upon said section. The terms of the lease which bound the landowner, Mrs. Mathwig, were to the effect that she was required to furnish the seed necessary to crop the land, except for said 50 acres for which she was to receive a cash rental. She was further bound to pay one-half of the machine bill for threshing the grain. The lease also embraced the following language: "It is hereby distinctly understood and agreed that the ownership and title to all of said grain shall be and remain in the party of the first part until all the conditions agreed to be performed by the said party of the second part are performed." The last provision in the lease reads as follows "It is hereby fully understood and agreed that all moneys advanced in the way of money, feed, or in any other way for the purpose of assisting in raising or caring for the within crops by the said party of the first part shall be, and it hereby is made, a first lien on all grain that may be owned

by the said party of the second part, and grown on said land." It is undisputed that the sheriff under a warrant issued in the action seized about 1,000 bushels of wheat, which wheat was found on the premises of the intervener, Mrs. Mathwig, which premises were then occupied by the defendant. This wheat, it seems, was within the control of the court below when it entered judgment, and that court adjudged that the same should be sold by the sheriff, and the proceeds of the sale applied in satisfaction of the several debts secured by the chattel mortgages involved in the action. There is no controversy as to the existence or filing of these mortgages, or as to the amount and bona fides of the debts secured by the same. It is claimed by counsel for respondent that the grain raised on the quarter section described in the mortgages was kept separate from other grain, and that soon after it was threshed it was placed in a granary on the land in question, and that one-half thereof was hauled to the elevator, and marketed by Konouzki, acting under the direction of Mrs. Mathwig in so doing. The grain remaining in the granary was the grain seized by the sheriff, disposed of by the judgment. There is no evidence in the case and no claim that Mrs. Mathwig has ever foreclosed, or attempted to foreclose, her lien for any advances made under the last stipulation in the lease, and above quoted, which gave her a lien upon Konouzki's interest in the crops as security for contemplated advances to be made to him by way of assisting him in raising and caring for the crop. Whatever rights the landowner may have acquired or failed to acquire under said lien feature of the lease have never been asserted, or attempted to be asserted, by the landowner; and hence this feature of the lease will be eliminated, and not considered in determining the issues.

Counsel upon both sides have laid stress upon the clause of the lease which provided "that the ownership and title to all of said grain shall be and remain in the party of the first part until all of the conditions agreed to be performed by the said party of the second part are performed." Under this feature of the lease the inquiry is propounded by appellant's counsel as to what title the tenant acquired to the crops raised on the premises during his term, and when he acquired any title thereto, if he ever acquired any title. It is our opinion that upon this record these questions will admit of but one solution. At the time the lease was signed, and at the time when the chattel mortgages were executed and filed, the tenant had no interest in the then prospective crop to which the lien of the mortgages could attach. The interest of the tenant in the crop was a contingent interest, and his title to the crop was conditioned upon the performance of all the covenants to be performed by him under his lease. After he had raised the stipulated crop, and threshed the same, the title to one-half of such crop would pass from the lessor to the tenant only upon the conditions named in the lease. Until these were performed or waived, the title would be and remain

in the landowner. See *Angell* v. *Egger*, 6 N. D. 391, 71 N. W. Rep. 547; also, *Bidgood* v. *Elevator Co.*, 9 N. D. 627, 84 N. W. Rep. 561. The case of *Bank* v. *Canfield* (S. D.) 81 N. W. Rep. 630, differs somewhat in its facts from the case at bar, yet it is entirely pertinent to the point that the title of the crops in this case never would pass from the landowner to the tenant until the conditions upon which title depended were performed by the tenant or waived by the lessor. Applying the rule of law enunciated by said cases to the lease contract in question, it at once becomes apparent that the lien of the chattel mortgages would attach to the crop only after the tenant had fully complied on his part with the terms of the lease. It follows also that the holders of the chattel mortgages who acquired no lien whatever at the time of the filing of the mortgages have the burden of showing that they did in fact acquire a lien at some date subsequent to filing the mortgages. All the mortgages were made and filed prior to threshing the grain; hence, under the provisions of the lease, the mortgagor had no interest in the grain to mortgage at the time the mortgages were executed and filed.

A careful reading of the evidence has served to convince this court that the plaintiff has signally failed to show that the mortgagor, Konouzki, has performed the conditions of the lease on his part. The plaintiff offered no evidence tending to show a performance on the part of the tenant; while, on the other hand, the lessor testified squarely that he had failed to do so. There was evidence offered showing that a crop of wheat was raised in 1898 on the tract of land described in the chattel mortgages, but the evidence falls far short of showing the exact number of bushels grown upon such tract. It further appears that a considerable quantity of the grain which the respondent claims was raised on the mortgaged premises was removed from the granary and sold. The amount so removed cannot be exactly ascertained from the evidence, but Mrs. Mathwig testified that she thought the amount was 896 bushels and 10 pounds. But the general fact that a quantity of grain was taken out of the granary soon after threshing, and was sold, is asserted on both sides, and is a conceded fact in the case; and, as has been seen, the grain seized by the sheriff and disposed of by the judgment is a quantity of grain which was found in the granary after a portion of grain had been removed from said granary to an elevator and marketed. The respondent's contention is that the grain removed and sold represented one-half of the grain which was raised on the tract covered by the mortgages; and, further, that all the grain in question which was taken out of the granary and sold was the share of the landowner in the crop which was raised on said premises. In other words, respondent's counsel claim that the grain raised on the mortgaged premises has, by agreement of the parties to the lease, been divided, and the one-half part belonging to the landowner had been removed and sold by her, and that the other

moiety left in the granary was the one-half share thereof turned over to the tenant after a division of this particular crop; and as to this feature the trial court found as one of its findings of fact that the grain which was unsold and left in the granary was the share which belonged to the tenant, and that he owned the same, after a division of the crop. This court cannot assent to this conclusion of fact. Under the evidence, which is practically undisputed, we have reached an opposite conclusion. As a basis for an examination of the testimony bearing upon this vital question of fact we will here quote a paragraph from the complaint in intervention filed by Mrs. Mathwig: "That, after said grain was threshed in the fall of 1898, the said defendant's share of grain so raised on said described land was taken possession of by the intervener with the defendant's consent, and by her sold, the proceeds of which were kept by this intervener, and applied in payment of moneys advanced by this intervener to the defendant under the terms of the said written lease, and for the purpose of enabling defendant to raise, thresh, harvest, and market such grain so raised on said described land." It therefore is alleged by a verified pleading filed by the intervener that she sold the tenant's share of the grain raised on the mortgaged premises with the consent of the tenant, and that she applied the proceeds of such share to the liquidation of a certain claim which she then had against her tenant on account of advances made by her to him to assist him in executing the lease contract on his part. If these allegations are sustained by the evidence (and we think they are fully sustained), it is manifest that it is of no practical importance to consider in this case whether the tenant, under the evidence, has or has not fully performed the covenants in the lease which are binding upon him. If he has not done so, nevertheless the division of the crop in question was made in fact by the voluntary action of both parties to the lease, and by the consent of both parties the share of the tenant in this crop was set apart and sold at private sale for the tenant's benefit, viz: to pay a debt contracted by him on account of moneys advanced by the landowner to assist him in executing his contract. Mrs. Mathwig testified at length upon the matter of removing and selling the grain. She first testified as to the items of the advances which she made to Konouzki, and gave the aggregate thereof, which was $815.16. She then testified that Konouzki raised a crop on the mortgaged premises in 1898, and that some of said crop was hauled off and sold; "that the part so sold was considered his, and the proceeds thereof were to pay for those things I had to do to fill the contract." Further on she testified as follows: "The grain hauled off and sold in the fall of '98 was so sold to pay a portion of the money I had advanced for Konouzki. The amount I received for this wheat was credited on this $815.16." This testimony was substantially adhered to on cross-examination, and upon a careful perusal of all the evidence in the record we fail to find a scintilla

of countervailing evidence upon the matter of selling the tenant's share of this crop and the disposition of the proceeds of the sale. It is further true that this witness Mathwig frequently stated while on the stand that she claimed the title and ownership of the wheat under her contract with the defendant, and that she rested her title upon the terms of the lease and upon the fact that the tenant had failed and neglected to perform his contract in many respects, which she pointed out in her testimony. But it is our opinion that this claim of the witness, however true it may be in theory, cannot operate to destroy the effect of her direct statements on the stand to the effect that her tenant's share in the wheat had been recognized and separated by her, and thereafter had been sold with his consent, and for his direct benefit. This evidence, moreover, corresponds exactly with the averments of the complaint in intervention filed by this witness to which we have called attention. So far as this action is concerned, we regard this evidence as decisive of the case. We are unable to understand upon what theory of the evidence the trial court found as a fact that the grain left in the granary was the property of the tenant. From the same evidence we are compelled to find that said grain was the property of the landowner, and that the share of the crop in question which belonged to the mortgagor had been set apart by an agreement between the lessor and lessee, and taken away from the granary and sold, long prior to the commencement of this action. It follows, from our views of the evidence and the entire record before us, as above set out, that the grain which the trial court undertook to adjudicate upon and order sold to satisfy the chattel mortgages in question is grain owned by Mrs. Mathwig, and hence grain not covered by or embraced within the mortgages. So far as appears, the tenant never owned this grain. The judgment of the trial court must, therefore, be reversed, and the appellant and intervener, Mrs. Mathwig, is entitled to have judgment entered in the court below dismissing this action, and for her costs and disbursements in both courts; and this court will so direct. All the judges concurring.