HARRIS ARONSON V. HANS OPPEGARD, AS SHERIFF OF BARNES
COUNTY, NORTH DAKOTA, AND NORTHWEST THRESHER COMPANY
(INTERVENER).

Opinion filed Dec. 20, 1907.

**Trial — Equitable Issues — Trial by Court.**

1. Plaintiff brought an action for damages for the conversion of
grain raised on his land by a tenant under a written lease. The lease
provided that the title to the grain should be in the landlord until
a division thereof, and that he could hold the same until he had been
paid for all advances made to the tenant under the contract. Prior
to a division of the grain, the tenant mortgaged his undivided one-
half thereof to secure an indebtedness due to a third person, and the
mortgagee took possession of the grain and sold the same under the
chattel mortgage, through an agent. Plaintiff brought this action
against the agent for damages, and the mortgagee was permitted to
intervene.

*Held,* that the intervener was not entitled to trial by the court, as
no equitable issues were presented by the pleadings.

**Conversion — Pursuit of Property — Special Damages.**

2. Special damages on conversion of property are allowed, under
section 6585, subd. 3, Rev. Codes 1905, only when properly incurred
in pursuit of the property.

**Same.**

3. Evidence examined, and *held,* that the verdict is excessive as
to certain sums, warranting the granting of a new trial unless such
sums are remitted.

Appeal from District Court, Barnes county; *Burke, J.*

Action by Harris Aronson against Hans Oppegard, sheriff. The
Northwest Thresher Company, intervener. Judgment for plaintiff,
and intervener and defendant appeal.

Reversed on conditions.

*Ball, Watson, Young & Hardy,* for appellants.

Until division tenant has no title to grain raised by him under
a farm contract. Hawk v. Konouzki, 10 N. D. 37, 64 N. W. 563;
Bidgood v. Monarch Elev. Co., 9 N. D. 627, 84 N. W. 561; Savings
Bank v. Canfield, 81 N. W. 630; Angell v. Egger, 6 N. D. 391, 71
N. W. 547; Whithed v. Elev. Co., 9 N. D. 224, 83 N. W. 238.

Where an equitable counterclaim is interposed in a law action,
the equitable issue must first be tried by the court, before the legal

issues, as if the counterclaim were a separate suit in equity. Cotton v. Butterfield, 14 N. D. 465, 105 N. W. 237; Laffey v. Gordon, 15 N. D. 282, 107 N. W. 969; Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037; 7 Enc. Pl. & Pr. 810; Kimball v. McIntyre, 1 Pac. 167; Sheeful v. Murty, 30 Ohio. St. 30; Massie v. Stradford, 17 Ohio St. 596; Buckner v. Mear, 26 Ohio. St. 514; Lestrade v. Barth, 19 Cal. 660; Weber v. Marshall, 19 Cal. 447; Arguello v. Edinger, 10 Cal. 150.

A laborer is not entitled to a thresher's lien.

"Advances," as used in the contract, means a loan. 1 Am. & Eng. Enc. Law, 757, 759.

*Lee Combs,* for respondent.

Right of jury trial cannot be defeated by an intervener pleading equitable facts. Kassing v. Walter, 65 N. W. 832.

MORGAN, C. J.   Action for damages for the alleged unlawful conversion of grain. The plaintiff is the owner of the land on which the grain alleged to have been converted was grown. The land was cultivated during the year 1904 by one Jacobson under certain conditions specified in a written lease duly executed by Aronson and Jacobson. Among other terms of the contract, it was therein agreed that Jacobson was to farm the land during the years 1904, 1905 and 1906, and furnish all necessary tools and implements, and to furnish and provide all necessary hired help and supplies. Aronson was to furnish all the seed, and was to pay one-half of the machine bill for threshing grain, and was to pay an agreed sum per bushel for hauling the grain to market. The contract also contained the following provisions: "And the said party of the second part [Aronson] has the right to take and hold enough of the crop, stock increase, income and products, that would, on the division of the same, belong to said party of the first part, to repay any and all advances. made to him by said party of the second part and interest thereon at 10 per cent per annum, and also to pay all indebtedness due said party of the second part by said party of the first part, if any there be." The contract also provided that Jacobson should not remove from said farm any of the produce thereof, of any kind, description or character, without the written consent of Aronson, until a division thereof, and that, "until such division, the title and possession of all the hay, grain, crops and

produce raised, grown or produced on said premises shall be and remain in the party of the second part." It was further stipulated in the contract that "the party of the second part agrees, upon reasonable request thereafter made, to give and deliver on said farm the one-half of all grains and vegetables so raised and secured upon said farm during said seasons," etc. The crop was partially divided between Aronson and Jacobson, and Jacobson was permitted to dispose of other portions thereof by the written consent of Aronson; but, before there was a division of the wheat and flax, Jacobson gave a chattel mortgage on August 31, 1904, on his undivided one-half of all crops raised on the land to the intervener to secure the sum of $1,060, a debt due from him to said intervener, and he also sold and assigned all his interest in all of said crops to said intervener in April, 1905, and also sold and assigned to said intervener all claims which he had against said Aronson accruing by virtue of dealings under said contract. After said crop had been threshed, but before the division thereof, the defendant, Oppegard, took possession of said crop as the agent of the intervener by virtue of a certified copy of the chattel mortgage heretofore mentioned, and sold the same. It is for the value of the grain so sold that the plaintiff brings this action, claiming to be the absolute owner thereof under the terms of said contract. Damages were claimed in the sum of $2,435, with interest thereon since November 10, 1904.

The defendant, Oppegard, interposes an answer, and denies generally every allegation of the complaint. The Northwest Thresher Company intervened by leave of court, and in its complaint alleged that Jacobson had an equitable interest in all crops raised on said land before the division thereof, and that it was entitled to said grain by virtue of the chattel mortgage and assignment thereof from Jacobson to it, and that Jacobson was entitled to a division of said crop before intervener's mortgage and assignments were given. The intervener also asked for judgment in its favor for the sum of $338.50 claimed to be due to Jacobson on account of certain transactions between him and Aronson under the contract, which Jacobson duly assigned to the intervener. The plaintiff answered the intervener's complaint, and set forth in detail all advances made by him to Jacobson under the contract, and denied all the allegations on which the counterclaim was based.

A jury trial was had, and a verdict was rendered in plaintiff's favor for the sum of $1,411.55. On a motion for a new trial, the

trial court reduced said verdict in the sum of $240, and ordered a new trial unless plaintiff would consent to remit that sum, and, if consent was given, that the motion for a new trial be denied. The plaintiff filed a written consent that the verdict be reduced in said sum. The intervener has appealed from the order denying a new trial. Appellant contends that the order should be reversed for three reasons : (1) That he was entitled to have the equitable issues raised by the complaint in intervention and the answer thereto disposed of by a trial to the court. (2) Errors in the admission of evidence. (3) That the verdict was excessive. No question is or was raised as to whether the Northwest Thresher Company was properly permitted to intervene. The issues raised by the intervention pleadings have been litigated without objection, and the appeal will be considered and determined on the assumption that it is a proper case for an intervention, as the parties have waived any objections thereto, if subject to objections at all.

Whether the plaintiff was entitled to a trial by a jury as a matter of right after the intervention had been allowed is a disputed question on the record. Plaintiff contends that an intervener cannot, by raising equitable issues, deprive the plaintiff of his right to a trial by a jury. In other words, it is claimed that the nature of the action must remain the same after as before an intervention, although issues of a different nature are thereby raised. The intervener insists that the same rules must apply in determining whether a jury trial is demandable, after an intervention, as in cases where there is no intervention, although the character of the issues may be changed by the intervention. This question need not be considered, as no strictly equitable issues are presented by the intervention pleadings. The facts set forth in the intervener's complaint entitle it to no equitable relief, and nothing of an equitable character is prayed for. The question ultimately to be determined was, what advances did the plaintiff make to Jacobson under the contract? It is conceded that Aronson is entitled to retain possession of the whole crop until he has been reimbursed for advances made by him pursuant to the contract. What those advances were, and whether they were within the contract, presents no equitable question. The intervener has placed itself in the same position as the defendant would have been in, had there been no intervention. Had the defendant refused to give the plaintiff possession of this grain, the plaintiff could have replevined it; but he would be en-

titled to retain its possession only until satisfaction was made as to the advances made by him. Whereas the title is to remain in the plaintiff until division, his rights thereto are not absolute, but are subject to Jacobson's rights thereto whenever he has complied with the contract. Angell v. Egger, 6 N. D. 391, 71 N. W. 547; Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563.

The defendant—or, standing in his place, the intervener—was entitled to show the relations existing between the plaintiff and Jacobson under the contract and what the extent of Jacobson's obligations to the plaintiff were as bearing on the question of damages. The plaintiff was only entitled to the actual damages suffered by him by reason of the unlawful taking of the property. He was not entitled to damages to the full extent of the value of the property, but to the extent of his interest therein by reason of having made advances to Jacobson. Whatever the grain was worth over and above such advances the plaintiff had no interest in. This case is analogous to conversion cases, where the property taken is mortgaged and the mortgagee brings an action for its unlawful conversion. In such cases he is entitled to damages only to the extent of his lien, and special damages in certain cases. The defendant in such cases is entitled to show the extent of such lien in mitigation of damages. The fact that in the case at bar the title to the property was in the plaintiff does not make it different in principle. If plaintiff had brought an action in claim and delivery for the return of the possession wrongfully taken by the agent of the intervener, the plaintiff would have been entitled to a return of the property; but the judgment would be in the alternative—that upon payment of the advances the defendant would be entitled to its possession. Angell v. Egger, supra. The trial court did not err in submitting the issues to the jury, as no equitable issue was involved.

Errors are assigned on rulings in admitting certain evidence. The first of these relates to evidence of expenses incurred by the plaintiff in regard to a lien filed by a farm laborer for his wages. These expenses amounted to the sum of $86.50. After investigation, the plaintiff paid the lien and secured its release. We do not think that this expense was proper as damages in the conversion suit. The statute permits a plaintiff in an action for damages for the conversion of his property to recover "a fair compensation for the time and money properly expended in pursuit

of the property." Subdivision 3, section 6585, Rev. Codes 1905. Expenses in and about the protection of property from a laborer's lien filed by a person cannot be justly claimed to be an expenditure in pursuit of property wrongfully taken by another person, from whom damages are claimed. The expenses on the lien claim do not seem to be at all connected with expenses in pursuit of the property taken by the intervener. The evidence as to expenses on this lien claim should have been excluded as not within the terms of the statute. It was therefore error to admit this evidence as bearing on the damages suffered by the plaintiff on account of the conversion. The amount of these expenses was $86.50. The admission of this evidence entitles the defendant to a new trial.

The intervener claims that other sums were included in the verdict which render it excessive. The objections to these sums are that they cannot properly be called advances within the terms of the contract. We think that the lease authorizes the plaintiff to hold the grain for all advances to Jacobson at his request, specifically or generally given or expressly acquiesced in or consented to be considered as advances. The provision of the lease as to advances contemplates that they are to be made as Jacobson and Aronson, the lessee and lessor, should agree. Aronson and third persons could not, by an arrangement between themselves, subject the grain to the terms of the contract without Jacobson's consent, given either to Aronson or such third person. For instance, Aronson would not be authorized to guarantee or purchase Jacobson's debts, not incurred under the terms of the lease nor within its provisions, and hold the grain until such debts are paid. It seems from the evidence that plaintiff was allowed certain sums as advances which were not furnished to Jacobson for use on the farm at all. The plaintiff guaranteed to pay these sums and others, without reference to the purposes for which they were to be used, and without reference to whether Jacobson consented that his share of the grain should be held for their payment. As stated, we do not think that this was permissible under the contract. Jacobson gave his notes to Blank for certain goods sold to him by Blank, and Aronson paid these notes and now asks to have them allowed as advances. As we construe the evidence, these notes represented personal debts of Jacobson, not in any way connected with the contract. The indebtedness mentioned in the contract, for the payment of which Aronson was authorized to hold the grain, refers to any indebtedness

due Aronson on account of advances made under the contract. Included in the plaintiff's claim against Jacobson is the sum of $234.65, represented by notes and book accounts of said Blank. This sum was not within the terms of the contract. The verdict cannot be sustained, except on the theory that the jury allowed this sum. It was therefore excessive to this extent and in the further sum of $86.50, expenses claimed by Aronson in coming from St. Paul to protect his property from the lien filed by the farm laborer. The verdict was therefore excessive in the sum total of $321.15, besides 10 per cent interest thereon for one year, which was included in the verdict.

We have examined appellant's contentions that the verdict is excessive as to other sums, but we find these contentions untenable. The intervener is entitled to a new trial or to have the verdict reduced by this sum. As the evidence shows the precise sum in which the verdict was excessive, we deem this a proper case for entering a conditional order for a new trial.

A new trial is ordered, unless the plaintiff shall, within ten days after the remittitur is filed in the office of the clerk of the district court, consent in writing that the judgment be reduced in the sum of $353.26, in addition to the reduction of $240 ordered by the trial court. The intervener will recover costs of this appeal, if plaintiff does not consent to such reduction. Neither party will recover costs, if consent to the reduction of the verdict be filed. All concur.