STATE BANK OF MAXBASS v. HURLEY FARMERS ELE-
VATOR COMPANY, a Corporation, and J. A. WHITMORE,
Intervener, Consolidated with STATE BANK OF MAXBASS, a
Corporation, v. JOHN D. GRUBER COMPANY and J. A.
Whitmore, Intervener.

(156 N. W. 921.)

**Mortgagee — conversion — action   for — cropping   contract — tenant — owner
of land — title to grain raised — to remain in owner — physical division
of grain — equal parts — placed in different bins — knowledge of land-
lord — no   objections — asserting   claim — delay   in — mutual account —
unsettled — facts — jury — submission of case to — on questions of deliv-
ery and division — vesting title.**

1. Actions in conversion by mortgagee, plaintiff, for grain delivered elevator companies, defendants. W., owner of the land on which the grain was raised under a contract with his tenant B., intervenes, asserting that title to the grain had never passed to the tenant, and that plaintiff's mortgage had never attached, and that intervener was entitled to said grain to satisfy his alleged claims against his tenant. The cropping contract was in the usual form, stipulating title as remaining in the landlord until after a division and delivery of the crop or its proceeds, and empowering the landlord to retain the crop or any portion thereof for any indebtedness due him from the tenant.

---

Note.—Croppers, who they are, their title and their remedies is the subject of a note in 98 Am. St. Rep. 952.

Croppers as tenants are discussed in note in 4 L.R.A.(N.S.) 698.

A physical division of the grain into equal parts at the threshing machine was proven; also, that the portions were placed in different bins; that the tenant was permitted to hold his portion and store the same in his own name, understanding the same to be his share; that the landlord knew all this, made no objection, and took no steps for six weeks after threshing; and until long after marketing, to assert any claim to the tenant's portion; that meanwhile the tenant had hauled to market the landlord's portion, at his request, and as the landlord's share and in compliance with the contract; that the tenant had paid his portion of the thresh bill and performed all conditions of the contract, except one in which he was prevented during the summer by the landlord from completing; that the crop in question was raised the first year of a three years' cropping agreement; that no formal settlement of accounts had been had or was had, although the tenant was released from further performance of the contract by the landlord the following spring; that there was a mutual account between the parties unsettled. The court permitted the landlord to show the full amount of his account against the tenant, but excluded proof offered by the plaintiff from the tenant that the landlord owed more than the latter owed the landlord, and that in fact the landlord had no charge or lien upon the grain at the time it was delivered at the threshing machine to the tenant and by him subsequently marketed.

*Held:* The facts were sufficient to authorize submission to the jury of whether a division and delivery with intent to vest title in the tenant had been made; and

**Mutual accounts — landlord and tenant — between.**

2. The fact that a settlement of mutual accounts between the landlord and tenant had not been made is not necessarily controlling.

**Grain — conversion — landlord — extent of recovery — issues as framed — landlord's claim — amount thereof — validity.**

3. In an action in conversion of grain and under issues as here framed by the pleadings, the landlord can recover only to the amount that will suffice to completely indemnify him from actual injury. It was therefore necessary to determine the validity and amount of his alleged claim and lien.

**Testimony — exclusion of — lien — waiver of — division — intent of parties — landlord — subsequent acts — amount of indebtedness.**

4. Under the pleadings and the proof the excluded testimony was admissible (a) on whether the landlord had not waived any lien he may have claimed upon the tenant's share for advances; and (b) as bearing upon the intent with which the division was made and acts subsequent thereto were permitted by the landlord, and (c) as proper proof under the pleadings and the issues involved as to the amount the tenant was owing the intervener if he owed him anything at all.

33 N. D.—18.

**Plaintiff — jury — questions for — verdict — direction — error.**

5. Plaintiff was entitled to have the foregoing questions submitted to the jury, and the direction of a verdict against plaintiff after the proof made was error.

**Judgments — appeals — orders — costs — taxation.**

6. As this appeal determines two actions, the judgments appealed from are ordered set aside and new trials are granted, with plaintiff's costs to be taxed against the intervener. The elevator companies being mere stakeholders, no costs will be taxed against them.

Opinion filed February 16, 1916.

Appeals from the District Court of Bottineau County, *Burr,* J. Reversed.

*John E. Martin,* and *Bowen & Adams,* for appellant.

The court erred in granting the motion for and directing a verdict in favor of defendant. The questions of whether or not there had been an intended actual division of the grain between the landlord and tenant, and the waiving of any lien or claim to ownership by defendant, should have been submitted to the jury, under proper instructions from the court. The evidence was conflicting upon material facts. Lallier v. Pacific Elevator Co. 25 S. D. 572, 127 N. W. 558; Aronson v. Oppegard, 16 N. D. 595, 114 N. W. 377.

In this case there was an actual division of the grain between landlord and tenant, so that its identity was fixed, and the tenant was permitted to treat that portion of the grain mentioned in the contract, and so set apart as his property, to market and store the same in his own name, all with the knowledge of the landlord, and without objection. Under these circumstances the tenant's chattel mortgage upon his half of the grain attached thereto and became a valid lien thereon. Aronson v. Oppegard, supra; Angell v. Egger, 6 N. D. 391, 71 N. W. 547; Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563; Simmons v. McConville, 19 N. D. 787, 125 N. W. 304; Lallier v. Pacific Elevator Co. supra; Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561.

It was Whitmore's duty to establish and prove the amount of his lien, if he had one. Aronson v. Oppegard, supra.

*Weeks & Moum,* for intervener and respondent, and *Grace & Bryans* and *A. Woodward,* for respondents.

The mortgagor had no interest in the crop at the time the mortgage was given. His interest was contingent upon his full performance of the contract with his landlord. Until such performance, the title to all the grain remained in the landlord or owner of the land, and the tenant's chattel mortgage thereon did not attach or become a lien. Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563; Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561; Savings Bank v. Canfield, 12 S. D. 330, 81 N. W. 630; Angell v. Egger, 6 N. D. 391, 71 N. W. 547; Whithed v. St. Anthony & D. Elevator Co. 9 N. D. 224, 50 L.R.A. 254, 81 Am. St. Rep. 562, 83 N. W. 238; Simmons v. McConville, 19 N. D. 787, 125 N. W. 304.

In an action by a mortgagee the burden of proof is upon him to show that the mortgagor had or acquired legal title, at some time prior to the action. An equitable interest is not sufficient. Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563.

Goss, J. This opinion decides two appeals. The plaintiff in separate actions sued the Hurley Farmers Elevator Company and the Gruber Company for conversion of grain stored by one Warren Benson. Plaintiff's rights in both cases are claimed upon the crop admittedly grown upon the same land. Both elevator companies answer that they are merely holding certain grain stored with them by Benson, and are willing to deliver the grain or the proceeds thereof to whomsoever the court shall decide shall be entitled thereto, and that the grain has been claimed by both plaintiff and one J. A. Whitmore, upon whose land it was raised. Thereupon, by stipulation of all parties, Whitmore was allowed to file his complaint in intervention, claiming the grain as against the elevator companies and plaintiff. The cases were consolidated. The same record governs both appeals. At the conclusion of the plaintiff's case the trial court directed a verdict for the intervener, dismissing both actions, and adjudging Whitmore the owner and entitled to all said grain. Plaintiff appeals.

The facts are not much in dispute. The intervener owned the land farmed by Benson, his tenant, in 1912 under the usual cropper's contract stipulating that title should be and remain in the landlord until after division and delivery of one half of the grain to the tenant, or the

proceeds thereof, and that such reservation of title should also be security for the full and faithful performance of all conditions of the contract and any advancements to the tenant, and that the landlord might deduct for any advancements or indebtedness of the tenant from the tenant's share of the grain, or the proceeds thereof. The lease did not expire with the crop season of 1912, but covered the next two succeeding years. No express or stipulated settlement was made of the mutual accounts of the parties, but the contract was abandoned by mutual consent in the spring of 1913, without one following the threshing and division of the grain and the marketing of it in fall of 1912. The issue presented is whether there is sufficient proof to take the case to the jury for their finding upon whether the crop was divided between the parties, and the tenant's share delivered to him upon the farm and with the then and there intent on the part of the landlord that the portion so delivered to the tenant should be the tenant's share of the crop, irrespective of the fact that no settlement had been had, and that the landlord might have withheld until final settlement the possession of all or a part of the tenant's portion of the grain. Was a delivery made by the landlord to the tenant of the one half of the grain after its division, and with the intent that the grain delivered should be marketed and sold by the tenant as his property? The answer to this question decides the case. If the proof raises an issue of fact on this question, the dismissal of the action was erroneous, and the case should have been submitted to the jury upon the evidence touching such question.

The tenant testifies and the intervener admits that both were present at the threshing, which was in November, very late in the season; that a physical division of the grain raised was made at the machine, exactly one half being taken by each, the tenant's share being placed in his granary on the farm and the landlord's in a separate bin near the machine; and that such equal division was made by the thresher, to the knowledge and acquiescence, and presumably under the direction, of both the tenant and landlord, present; that the tenant, who under the terms of the lease was obliged to market the landlord's share free of charge, soon after threshing started hauling his own grain and drew 9 or 10 loads to the elevators; that at all times the landlord was living

on the place closely adjacent to the house in which the tenant and family resided. He knew that the tenant was marketing said one half of the grain as his, the tenant's, grain, and that the tenant was taking elevator slips for the wheat in his own name. These slips in evidence show that the hauling of the tenant's share took at least ten days. The tenant testifies that some three or four times or more he showed the tickets to the landlord during conversations upon whether the weights were holding out with the threshing machine measure, and that the landlord never made any objection to the hauling or the placing of it in the elevator in the tenant's name, and that he, tenant, supposed he was hauling his own wheat, and that the final division of it had been made at the machine. Intervener does not claim to have notified Benson to store the grain, or to have given any direction concerning it, or to have attempted any control of what Benson was doing with it. That as soon as Benson had his share hauled he turned the slips evidencing its delivery to these elevators over to the plaintiff bank, and authorized them to collect from the elevators and apply the proceeds on his mortgage to them, concededly for more than the amount of all the grain marketed. The tenant says he sold one or two loads to get money to pay the threshing bill, and paid his share of that out of his one half of the grain, or the part of it so sold. That after marketing his share of the grain he hauled the landlord's one half to market. What he himself did not haul of this, he furnished his team to haul, which Whitmore drove. Thus he fulfilled his agreement to market the landlord's share of the grain. Where the landlord's share was marketed does not appear. He admits, however, that after the first load of the tenant's portion was hauled he, the landlord, unknown to Benson, went to the elevator and found out that the tenant was placing it in store in his own name, but made no objection to that, and never questioned the tenant's right to handle his part of the grain as he did, nor did he notify the elevators that he had any interest in the grain until six weeks after the hauling and long after this suit had been begun, and some time in December. The tenant testifies that he complied in every respect and fully with every condition of his lease, and his attorney took up each separate stipulation therein and proved a compliance with it in fact, excepting one provision wherein the tenant agreed to haul out manure that had

accumulated from some years back, as well as that made during the year 1912. As to this clause of the contract it is admitted that all of the manure accumulating during Benson's occupancy of the premises was hauled and spread upon the land, together with about 200 loads of old manure, evidently the accumulation of years; that about an equal amount of old manure was left unhauled, but he states the reason it was not hauled and spread was that Whitmore stopped him hauling it, and set him to work instead upon a basement that he was having dug or built. The tenant also admits that during the summer Whitmore furnished 200 bushels of speltz, worth 67 cents a bushel, and a stove worth $47, and did some work for him, and also furnished him 200 pounds of flour and some pork, worth $11, making a total account against him of upwards of $200. The court permitted a close and searching cross-examination as to all such items, and permitted the defense great latitude in showing them, evidently to show that no settlement had been made, a fact that was conceded. Benson thereupon attempted to show various offsets against such account in board furnished Whitmore during the summer for thirteen weeks, at the reasonable value of $45; a team furnished him, at his request, for twenty-three days, reasonably worth $46; $40 for work and services rendered him in cutting grain in which the tenant was not interested; $40 for hauling stone and other services rendered him and other charges, all aggregating $279, "offered for the purpose of showing that Benson was not indebted in any manner or under any conditions to the plaintiff in intervention." This testimony offered both by questions and offer of proof was excluded. Under the issues as framed and tried, its rejection constituted reversible error. The offered testimony was admissible (1) as bearing upon the extent of the property interest of the intervener in the wheat in dispute, he having asked in his complaint that it be determined, and that he be given a lien upon and be adjudged to be entitled to the possession of the grain to pay himself the amount of his claims therein, and (2) it was admissible for and as having a bearing directly upon the question of whether when this wheat was thus divided and suffered to be marketed by the tenant as his own he, intervener, either could or would in all probability make any claim thereto. If the tenant was owing him nothing, but instead the indebtedness was

the other way, and with the tenant then bound by said contract to farm the land another year or more, there would be little reason for a settlement or anything more than a physical division of the grain. Upon these facts the jury could reasonably have concluded that the division made was, under all the circumstances, intended as an absolute one, and that the delivery at the machine of the exact one half of the grain to the tenant clothed the latter with title to the property he received. And if so, the plaintiff's mortgage then and there attached, and plaintiff should have prevailed.

Respondent urges that the most that has been shown was an equitable right to a division which a court would recognize in an action for an accounting, but that in the absence of an agreed settlement it must be held that the title remained in the landlord irrespective of the tenant's right to a division. Such is not the law under the facts peculiar to this case. The landlord has agreed, "upon reasonable request thereafter made, to give, release, and deliver to said party of the first part the one half of all grain so raised and secured from said farm during said season, or the proceeds thereof, if sold, after deducting from such share any charges, costs, or disbursements incurred and made by said party of the second part." He has agreed that the title retained by him to all of the grain shall remain in him until he shall thus release and deliver the one half of said grain "or the proceeds thereof, if sold." True he might have retained all the title until after a sale of the grain, in which event such mortgage never would have attached to any of the grain and he could have divided the proceeds, and the case would have been within the holding in Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561; Hermann v. Minnekota Elevator Co. 27 N. D. 235, 145 N. W. 821, and other cases. But when the landlord elects to adopt the other alternative, *i. e., divide the specific grain and set apart the tenant's portion to him without any deductions* for advances, and delivers the same to the tenant with intent that the tenant shall own the same as his share of the grain raised, just at that moment of delivery the lien of any mortgage otherwise in abeyance attaches, because the specific property has been set aside to the tenant, vesting title in him, and comes into existence so far as the mortgage is concerned. Thus the landlord may divide the grain, and deliver the

tenant his share free of any charge for advancements, and waive any rights under the lease to longer retain the tenant's share, and thereby invest the tenant with title to his share. And the question of fact is whether that was not exactly what was done in this case. The evidence seems to preponderate to that effect. Had the verdict been directed the other way, it is doubtful if it should have been disturbed had the proof been as it is. The trial court evidently went astray by assuming, as contended by respondent, that the title could not vest in the tenant to his share of the crop until after a settlement, overlooking the fact that it was within the power of the landlord to at any time waive the pro-visions for or the lien of his contract. "That the lien of a mortgage may be waived by the mortgagee cannot be questioned, and such lien may be waived by parol. Stone v. Fairbanks & Co. 53 Vt. 145; 25 Cyc. 673. And it may be impliedly waived by conduct of the lienholder inconsistent with the existence of a lien. 25 Cyc. 674," quoted from Van Gordon v. Goldamer, 16 N. D. 323, at 328, 113 N. W. 609. And all testimony tending to show that the intervener waived his lien is necessarily admissible, if otherwise competent, including testimony tend-ing to establish the value of the property and the extent of any interest or noninterest of intervener therein. Wadsworth v. Owens, 17 N. D. 172–177, 115 N. W. 667. And intervener having asked that the extent of his interest be determined and that he have the property because thereof, it was entirely proper for plaintiff to show either the extent of such interest, or that the intervener in fact had no claim against the tenant which was not already more than offset by the tenant's claims against him. As is said in Wadsworth v. Owens: "If the facts should develop on another trial that the title was to be in the plaintiff until a division of the crop, that fact would not warrant a judgment in plaintiff's favor for the full value of the crop. The rights of the parties after the right to the possession is determined are to be determined on equitable principles. This court has so held in an action similar to this one. Although the plaintiff may be entitled to the right to the posses-sion of the crop, that would not mean that the defendant [the tenant] had no interest in the crop. The plaintiff would be entitled to the pos-session thereof only to the extent of his interest therein, and the ver-dict should show what that interest is in view of the contract of the

parties.    That is the decision of this court in Angell v. Egger, 6 N. D.
391, 71 N. W. 547, and the principle there laid down was recently
sustained in Aronson v. Oppegard, 16 N. D. 595, 114 N. W. 377."
The same principle applies between the intervener, the landlord, and
the mortgagee, the tenant's assignee.    That those actions are in replevin
is not important, as in an action in conversion the mortgagee can recover
only the amount of his special interest in the property converted.
Lovejoy v. Merchants' State Bank, 5 N. D. 623, 67 N. W. 956.    "The
plaintiff (in conversion) can only recover to the extent of his actual
loss."    "If the case is such that the plaintiff can be fully compensated
by a sum of money less than the full value of the property which was
converted, the recovery will be limited to the amount that will suffice
for complete indemnity.    The plaintiff will be confined to compensation
commensurate with the actual injury."    5 N. D. 625, 626; Hanson v.
Skogman, 14 N. D. 445, 105 N. W. 90.    See also Force v. Peterson
Mach. Co. 17 N. D. 220, 116 N. W. 84, explaining Lovejoy v. Mer-
chants' State Bank, supra, and stating that the right of equitable set-off
in conversion actions exists independently of statute.    If the extent of
the landlord's claims against the tenant be but twenty-five or fifty dollars,
he should not in any event be permitted to recover more than the amount
necessary to make him whole.    Under no version of the testimony can
it be said that there was not at least a sufficient issue of fact to carry
the case to the jury, that they might determine whether this property
was set aside as and delivered to the tenant as his property absolutely;
and should the jury find against the plaintiff on that issue it should
also be required to find the amount of the landlord's interest in the
grain in suit, if any, by determining the amount owing the landlord
from the tenant, if any.    It is to be noticed that plaintiff's reply puts
in issue the allegations of intervener's complaint, that "this intervener
advanced money to said Benson in the sum of about $200, *no part of
which has been paid* . . .    and that the stipulations of said con-
tract have been broken . . .    and the said Benson is indebted to
intervener in the sum of $600 for money advanced, plowing not done,
feed furnished, and grain not delivered; for which he has a lien superior
to all other liens or mortgages on said grain."    Intervener has placed
these matters in issue as the basis for his claim of lien, and has been

allowed to support them with proof, while plaintiff has been denied the right to disprove them or show his version of the circumstances from which the jury may have concluded that but a trifling indebtedness existed from the tenant to the intervener. Such was the effect of the exclusion of the offered testimony.

In conclusion on retrial, should the jury find a division and delivery thereon intended to and passing title was made, it will find for the plaintiff and against defendants and intervener, and thereby decide all issues. Should it find that, though a physical division had been, made, yet no delivery thereunder vesting title had been intended and that title to the grain was not in Benson, it will not find for dismissal of plaintiff bank's action, but will find the amount of any indebtedness due from Benson to intervener; such indebtedness with intervener's costs will be paid from the proceeds of the wheat, and any balance will be ordered turned over to plaintiff bank to apply on its mortgage indebtedness, inasmuch as the elevator defendants have tendered the proceeds into court for direction as to application. The reasons for this disposition are obvious. The tenant makes no claim, but concedes the validity of plaintiff's mortgage and has so testified. If intervener recovers of the elevators, he can only recover, to the amount of his actual damage, the extent of his tenant's indebtedness to him, leaving possibly nearly all or the greater part of the wheat unclaimed by defendants and subject to division by the court under the pleadings and claims of the respective parties. Needless to say no amendment of pleadings to change such possible results should be permitted on a retrial after this adjudication of the rights of the parties on their pleadings.

The elevator companies have refused possession of the grain on demand therefor, and have technically converted it, but in reality are mere stakeholders, and no costs on trial or on appeal will be taxed against them. Plaintiff will recover costs on appeal against the intervener in both suits; costs on trials had and on retrial to abide results of the new trials awarded. The judgments appealed from are ordered set aside and new trials granted, and the causes are remanded for further proceedings.