# FRED W. LOHR v. WILLIS T. HONSINGER.

## (128 N. W. 1035.)

**New Trial — Verdict — Reduction by Court.**

1. The trial court has authority in a proper case to order a reduction of the verdict of the jury which he considers excessive, and to require the prevailing party to accept the reduced amount or submit to a new trial.

**Instructions.**

2. The refusal to give certain requested instructions, *held*, not error.

**Appeal and Error — New Trial — Evidence.**

3. Objections to certain questions considered in the opinion and the rulings thereon, *held*, prejudicially erroneous.

Opinion filed November 23, 1910.

Appeal from the District Court, Cass county; *Honorable Chas. A. Pollock,* J.

Action by Fred W. Lohr against Willis T. Honsinger. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals.

Reversed.

*Pierce, Tenneson, & Cupler,* for appellant.

*V. R. Lovell,* for respondent.

CARMODY, J. The Vermont Building Company was a corporation of the state of Iowa. The capital stock consisted of $60,000 common stock, and $35,000 preferred stock. Appellant owned $18,000 par value of the preferred stock and $59,700 par value of the common stock. The balance of the preferred stock, $17,000 par value, was owned by residents of Iowa, Vermont, and New York. Appellant was a resident of the state of New York. One of the purposes for which the corporation was promoted was the construction of a Masonic Block in the city of Sioux City, Iowa. In September, 1904, the sole property of the Vermont Building Company was an equity of redemption in the Masonic Block, and about $14,000 in money, in the possession of the treasurer in Sioux City. A mortgage on the Masonic Block had been foreclosed, and the year of redemption would expire about November 1, 1904. No redemption was made. Appellant and S. L.

Wheeler, an attorney residing at Plattsburgh, New York, and who had been consulted by appellant regarding the affairs of the Vermont Building Company, went to Sioux City on September 12, 1904, for the purpose of holding the annual meeting of the stockholders of such company, and electing officers and directors. Appellant, his wife, Henrietta Honsinger, and Wheeler were elected directors. Appellant was elected president and Wheeler treasurer. Appellant and Wheeler were at Sioux City from September 12th, to September 16th, 1904. The money, $14,000, was turned over to Wheeler as treasurer, and he took the same with him to New York, leaving no property belonging to such company in the state of Iowa. The plaintiff was a member of the firm of Lohr, Gardner, & Lohr, practising law at Sioux City, Iowa. This firm had been attorneys for the Vermont Building Company for several years, but plaintiff had never attended to any business for the company or appellant. The business had always been attended to by a brother of said plaintiff, W. F. Lohr, a member of said firm, who was also secretary and treasurer of the Vermont Building Company, but who was absent from Sioux City and sick while appellant and Wheeler were there. On September 16, 1904, a complete settlement was had between the plaintiff and appellant and the Vermont Building Company. At that time appellant purchased from respondent five shares of stock of the company, belonging to respondent's brother, W. F. Lohr, for the sum of $400. On the same day respondent gave appellant his negotiable promissory note for $500, payable on or before two years from date. This note was, before maturity, sold to the City National Bank of Plattsburgh, New York, and suit was commenced by the bank against respondent in the state courts of Iowa, and was pending at the time of the commencement and trial of this action. Appellant and Wheeler both testified that there was but $13,100 on hand on the 16th of September, 1904, and that the $400 worth of stock and the promissory note of $500 were turned over to appellant to make up the sum of $14,000, and that appellant paid Wheeler, as treasurer, $900 for the note, and the stock owned by W. F. Lohr. Respondent testified that appellant paid him $500 as a retainer; that appellant said he was suspicious of lawyers, and did not want to pay the $500 in cash, as he was afraid the legal services would not be performed, and that he (respondent) gave appellant his $500

note as in the nature of a personal bond that he (respondent) would perform the legal services for appellant. Respondent testified that while appellant was in Sioux City, in September, 1904, he employed respondent to look after any legal business that might come up, as appellant expected litigation on account of his removing the assets of the Vermont Building Company from Iowa to New York. This is denied by appellant and Wheeler. Respondent further testified that appellant was trying to figure some way to convert this $14,000 to his own use, either by using it to pay him back salary or to retire the preferred stock owned by him, and that he consulted respondent about this matter. This is also denied by appellant. About December, 1904, one Leroy Kent, a stockholder in the Vermont Building Company, commenced an action against appellant and the Vermont Building Company in the United States circuit court for the northern district of Iowa, asking for the appointment of a receiver for the Building Company. No service was made on appellant, except that a paper purporting to be a summons was served on him in New York. He made no appearance in the action. Plaintiff, who owned one share of the common stock of the corporation, intervened and tried to get the action dismissed. He testified that he intervened at the request of appellant and said Wheeler. A receiver for the Building Company was appointed by the United States circuit court for the northern district of Iowa, who undertook to get possession of the assets by proceedings in the United States Circuit court for the Northern district of New York, which court held that the receiver was not legally appointed. An action was commenced by George H. Hollister, receiver of the Farmers' Trust Company, against the Vermont Building Company. The firm of which plaintiff was a member were the attorneys for the plaintiff in that action. Afterwards the claim was sold to a man named McKenzie Stewart, who was a son-in-law of appellant. Part of the services claimed to have been rendered by respondent for appellant were in connection with this suit. After the action hereinbefore mentioned was commenced by the Bank of Plattsburgh, New York, against respondent, he came to Fargo, North Dakota, and commenced this action against appellant, attached some real estate, and obtained service on appellant. The account on which respondent brought this action is as follows:

1904.

Sept. 16, To services investigting matter of Honsinger's salary as president of Vermont Building Company and advice regarding same .................................. $50.00

Sept. 16, To counsel and advice regarding claim of Farmers' Trust Co. v. Vermont Building Co. etc. .............. 100.00

Sept. 16, To counsel and advice regarding priority of preferred stock held by Honsinger .................... 100.00

Sept. 17, To services searching records, etc., regarding suit of G. H. Hollister v. Vermont Building Co. ........... 50.00

Sept. 25, To services in investigating status of preferred stock of Vermont Building Co. .................... 100.00

Oct. 27, To services regarding redemption of Masonic Block from sheriff's sale ............................. 100.00

Oct. 30, To services in attempting sale of Masonic Block and of Honsinger's stock in Vermont Building Co. ......... 100.00

Dec. 19, To services examining records, etc., in Federal Court in case of Kent v. Honsinger et al. .............. 50.00

Dec. 22, To services in Kent v. Honsinger et al. ........ 50.00

1905.

Feb. 4, To services preparing application for permission to intervene in Kent v. Honsinger ..................... 50.00

Feb. 4, To services preparing motion to dismiss action in Kent v. Honsinger et al. .......................... 50.00

June 1, To services preparing brief and examining authorities in Kent v. Honsinger et al. .................... 100.00

June 3, To argument on motion to dismiss action in Kent v. Honsinger et al. .. ............................ 200.00

July 20, To services in case of Hellister, Receiver, v. Vermont Building Company, McKenzie, Intervener, at request of Honsinger ................................. 25.00

Sept. 11, To services in court and elsewhere in Kent v. Honsinger ......................................... 25.00

Sept. 14, To general services attending annual meeting of stockholders of Vermont Building Company, etc. ....... 50.00

$1,200.00

At the trial he withdrew the last item of $50 from the account. The jury evidently believed respondent's version of the transaction, and gave him a verdict for $1,155, and interest since May 1, 1906, on which verdict judgment was duly entered. In due time the defendant made a motion for a new trial, upon which motion the district court made an order denying the motion for a new trial, upon condition that said verdict and judgment be modified and reduced to the sum of $755, and interest since May 1, 1906, and that respondent file his written election to accept such reduction within twenty days from date of the order, else the verdict and judgment in said action be vacated, set aside, and a new trial granted. In accordance with the terms of said order, the respondent served upon the attorneys for appellant and filed with the clerk of court his notice of election to accept such reduction of the verdict and judgment, from which order and judgment defendant appeals to this court.

Appellant assigns numerous errors on the admission and rejection of testimony, and on the refusal of the court to give to the jury the instructions requested by him. The order of the trial court, reducing the amount of the verdict $400, does not recite upon what ground it was made, nor that any items sued upon were stricken out in making the reduction, because they were not supported by the evidence. Appellant strenuously contends that the evidence is insufficient to justify the verdict, and that the damages are excessive, appearing to have been given under the influence of passion or prejudice, and that it will not do for the trial judge to reduce the verdict to what he believed the jury should have found; that would be substituting his judgment for that of the jury.

That the court has the power to require a remittitur in a proper case is now the settled doctrine in this state. Ross v. Robertson, 12 N. D. 27, 94 N. W. 765; Aronson v. Oppegard, 16 N. D. 595, 114 N. W. 377; Galvin v. Tibbs, H. & Co. 17 N. D. 600, 119 N. W. 39.

Upon the main question in the case, as to whether there was an employment, the parties were directly in dispute, and the jury were at liberty to believe whichever they chose. There was some evidence to support the conclusion reached, and, independent of other considerations, we might not be disposed to set aside their conclusion. Upon

the question of the value of the respondent's services, there was no testimony except his own. It appears from the testimony that the gross receipts of the firm of Lohr, Gardner, & Lohr during the year 1903 were about $5,000. It further appears that all matters between the appellant and the building company and the plaintiff were settled in full on September 16, 1904. The plaintiff kept no books of account; he made no charge; he presented no bill to appellant until after the commencement of this action, when the court ordered him to furnish an itemized account.

It is claimed that the court erred in refusing the instructions requested by the defendant. After a careful consideration it is our opinion that there is no reversible error in refusing the instructions.

On the trial counsel for plaintiff examined appellant as to matters that were irrelevant to the issue, but having a tendency to create a bad impression against him. Appellant was called for cross-examination under the statute, sworn and examined as a witness, and testified: "I live in West Chazey, New York, and have lived there during all the time covered by Mr. Lohr's testimony; I was in Iowa in 1904, the last time in September of that year. I am familiar with the affairs of the Vermont Building Company; I am the owner of a majority of the preferred stock, and was in 1904 and 1905; there was $35,000 preferred stock in the company. I owned $18,000 some odd, I couldn't give it exact. The balance of the preferred stock of the Vermont Building Company, being a minority, was owned by different persons, some reside in New York, and I presume some in Iowa, and some of them in Vermont. All of them put together did not own as large a block of the preferred stock as I did. There was $60,000 in common stock; the total capitalization was $95,000. A. H. Hazen and F. W. Dwinnell were the principal movers in the organization of the company; I became interested after the organization, through F. W. Dwinnell; also talked with Hazen about it. If I remember rightly, I own 597 shares of the common stock, par value, that would be $59,000; I didn't pay $59,700 for it."

He was then asked the following questions: "How much did you pay for the common stock of the company?" Appellant's counsel objected to the question as incompetent, irrelevant, and immaterial. The objection was overruled. Appellant answered: "$150. I paid $150

for $59,700 par value of the common stock of the Vermont Building Company." Appellant was asked this question: "This $14,000 that you took back to the state of New York from the state of Iowa on or before the 16th day of September, 1904, have you ever disbursed any of it in dividends to the holders of the minority interests of the stock?" Objected to as incompetent, irrelevant, and immaterial. Objection overruled and appellant answered as follows: "I never disbursed it, minority or majority either; it is in the hands of the treasurer." Appellant was asked the following question: "There is no apparent reason, so far as you know, for the continuation of the existence of the Vermont Building Company, is there?" Objected to as incompetent, irrelevant, and immaterial; not shown to be in any way connected with the issues. Overruled; answered as follows: "Not without it should choose to go into business further during the life of the corporation." Appellant testified as follows: "I was interested to know whether the funds in the hands of the Vermont Building Company could be applied in the retirement of the preferred stock. I looked that question up, it might have been a matter of importance to me." He was then asked the following question: "Q. And you wanted to have the preferred stock in your hands retired by the payment of the par value of that preferred stock out of the treasury of the Vermont Building Company, didn't you?" Objected to as incompetent, irrelevant, and immaterial; calling for a conclusion; calling for a state of facts not in evidence, and calling for a matter not in issue now between the parties, and in no way connected with it, which objection was overruled, to which question he answered: "As it might be, according to law, and the by-laws and articles of incorporation of the company." The respondent was asked the following question: "Q. Counsel has interrogated you with regard to the results that could happen to Dr. Honsinger by the appointment of a receiver for the Vermont Building Company, in the state of Iowa; please explain to the jury what results could accrue to Dr. Honsinger by the legal appointment of a receiver in the state of Iowa for the Vermont Building Company." Objected to as not the question which counsel for defendant propounded to witness; but the question which was propounded and which he answered was, What benefit did accrue to Dr. Honsinger or to the Vermont Building Company, not what might

have accrued, which objection was overruled and plaintiff testified
as follows: "In that case the receiver could proceed to the state of
New York and commence action to recover the $14,000, in the hands
of the treasurer; he could return with it to the state of Iowa, and
administer it there in accordance with the order of the court, which
would have been more in accordance with the wishes of the minority
stockholders who secured his appointment. The appointment of a re-
ceiver in the state of Iowa was asked on behalf of the minority stock-
holders. The appointment of a receiver in the state of Iowa would
have resulted in the surrender, by the attorney for Dr. Honsinger, of
the funds which he had in his possession." Surely this answer was
only a conclusion of the witness, and was prejudicial.

We think this testimony objected to, as a whole, had direct ten-
dency to inflame the minds of the jury, and create a prejudice against
the appellant; and the fact that the trial court thought that the ver-
dict was excessive in the amount of $400 confirms us in the opinion
that the verdict in this case does not represent that fair and impartial
consideration which should characterize the decision of disputed ques-
tions of fact.

As a matter of fact, in the case of Kent v. Vermont Building Com-
pany and Honsinger, in which respondent intervened, a judgment
was obtained in the United States circuit court for the northern dis-
trict of Iowa, dissolving the corporation, and appointing a receiver,
and an ancillary action was brought in the United States circuit
court for the northern district of New York, based on that judgment,
to require the officers of the corporation to turn over to the receiver
appointed in the action in Iowa, the funds belonging to the corpora-
tion; and the defense was that that judgment was absolutely void for
the reason that the United States circuit court for the northern dis-
trict of Iowa obtained no jurisdiction of the corporation, and the
decision of the United States circuit court of the northern district of
New York was based upon the fact that the United States circuit for
the northern district of Iowa obtained no jurisdiction of the corpora-
tion, and therefore the judgment in Iowa was absolutely void. Hence,
plaintiff's conclusion of what would be the result of the appointment
of a receiver in the Kent action was wrong.

The order and judgment appealed from are reversed, and a new trial granted.

All concur, except Morgan, Ch. J., dissenting.

Morgan, Ch. J. (dissenting). It may be that the cross-examination set forth in the majority opinion had a tendency to create prejudice in the minds of the jurors, but that is not the question before us. If it was proper cross-examination, the fact that it had that effect on the jury is not any reason for setting aside the verdict. If conceded to be improper cross-examination, that does not necessarily result in a new trial. The question in that case would be, Does the verdict show that the cross-examination had the result of creating passion or prejudice in the minds of the jury, growing out of such cross-examination?

I do not think the cross-examination improper or prejudicial. It had a direct bearing on plaintiff's employment, and whether, and to what extent, the services were beneficial, and the interest of the appellant in the services rendered by the plaintiff. On this appeal the question is whether the verdict was excessive after the trial court ordered that plaintiff must remit $400 or a new trial would be granted. The amount of the recovery as it now stands does not seem to me excessive, in view of the necessary finding of the jury that defendant employed the plaintiff, and that the services shown by the evidence were actually rendered. It does not appear clearly excessive, which is the only test in this court.

I therefore respectfully dissent from the conclusion reached by the court.