T. H. BURNS, Respondent, v. COLUMBIA ELEVATOR COMPANY, Appellant.

(220 N. W. 630.)

Opinion filed May 3, 1928.   Rehearing denied July 23, 1928.

*W. H. Stutsman* and *Morrison & Skaug,* for appellant.

*Jacobsen & Murray,* for respondent.

CHRISTIANSON, J.   Plaintiff brought this action to recover damages for the alleged conversion of wheat and rye grown in 1925 upon certain lands in Sioux county in this state.   The complaint alleges that the plaintiff, during all the times in controversy, was the owner of said real estate; that said premises were farmed during the year 1925 by one Palmer under a written farm contract; that by the terms of said

contract title to all the crops produced was reserved in the plaintiff until the said Palmer had performed all the conditions of the contract and had paid all indebtedness that might be owing by said Palmer to the plaintiff; that upon the performance of all the conditions of the contract said Palmer was to receive as his share one half of the crops so raised; that during all the times involved in this controversy, Palmer was indebted to the plaintiff in the sum of $500; that said crops were never divided and that said Palmer never paid said indebtedness to the plaintiff and that the plaintiff has at no time received any of the grain or any part of the proceeds thereof; that between September 1, 1925, and March 1, 1926, the defendant converted all of said grain to its own use, to plaintiff's damage in the sum of $2,700.42. The answer is in effect a general denial; but admits the corporate capacity of the defendant. The answer further alleges that during the years 1923–24 and 25 the plaintiff and one Palmer were associated in the operation of the farm described in the complaint. That said Palmer had exclusive charge of the farming operations; had sole charge of storing, hauling and selling the grains produced on said farm, and that during said years the said Palmer, with the full knowledge and acquiescence of the said plaintiff, marketed the grains and sold the same to the defendant's elevator and to other elevators near the farm and collected the proceeds thereof; that it was the custom and practice of plaintiff and Palmer to permit this to be done and that the plaintiff constituted said Palmer his agent to sell and market his grain and receive the purchase price therefor. The answer further alleges that the plaintiff had violated his contract with Palmer; that plaintiff's title and interest in the grain is dependent upon his contract with Palmer and that Palmer claims damages against the plaintiff by reason of breach of the conditions of the contract in excess of the amount plaintiff seeks to recover in this action. The case was submitted to a jury and a verdict returned in favor of the plaintiff for $1,645.21, with interest from February 4, 1926. The defendant moved for judgment notwithstanding the verdict or for a new trial. This motion was denied and defendant has appealed from the judgment and from the order denying its motion for judgment notwithstanding the verdict or for a new trial.

The material facts are substantially as follows: . The plaintiff,

Burns, was the owner of a tract of land in Sioux county in this state. In 1922 he entered into a farm lease or contract with one Palmer, under the terms of which Palmer was to work the land on the share plan. Palmer did so and produced crops in the years 1923–24 and 25. The 1925 crop alone is involved in this controversy. During 1922 and some years prior thereto, one Leadam farmed the land for Burns. It appears from the testimony that Leadam hauled the grain, including the share belonging to Burns, sold the same and deposited the proceeds belonging to Burns in the First National Bank in Morristown. It appears also that when Palmer went upon the premises a large portion of the 1922 crop belonging to Burns was upon the premises and it is undisputed that Burns authorized Palmer to haul and sell this grain. The evidence further shows that Palmer hauled and sold the share of the grain belonging to Burns in the years 1923 and 24 as well as in 1925. Burns, however, testified—and in this he is corroborated by one Maher,—that in the fall of 1924, he went to the elevator of the defendant at Morristown and specifically warned the elevator agent not to buy his (Burns') share of the grain from Palmer. Burns' testimony is further to the effect that he forbade Palmer to sell his (plaintiff's) grain. This is denied by Palmer and by the agent of the defendant elevator company.

The first contention advanced by the appellant is stated in its brief thus:

"The district court should have sustained defendant's motion for judgment non obstante. There was absolutely no evidence to sustain a verdict for plaintiff and the court should have held as a matter of law that the evidence established an ostensible agency."

We have carefully considered all the evidence and are of the opinion that this contention cannot be sustained. There was, as has been indicated, the testimony of Burns, corroborated by that of Maher, to the effect that in the fall of 1924, Burns notified the agent of the defendant elevator company that Palmer was not authorized to sell his grain. We know of no rule of law which justifies a court in saying that this testimony must be disregarded. Whether this testimony was true or not was a question for the jury. Hence, the trial court was entirely correct in denying the motion for judgment notwithstanding the verdict. In other words, we are agreed that it cannot be said as a matter of law

that there was either actual or ostensible agency on the part of Palmer to sell Burns' grain; but that under the evidence in this case the question of the existence of such agency was one of fact.

It is next contended that the trial court erred in instructing the jury upon the doctrine of estoppel. The defendant asserts that there was no claim on its part of equitable estoppel; that its claim was that there existed ostensible agency on the part of Palmer to sell Burns' grain; that, consequently, instructions on the law of estoppel should not have been given and that such instructions tended to mislead and confuse the jury.

An examination of the record leads us to the conclusion that defendant is in no position to predicate error upon such instruction. The record shows that the defendant was permitted to introduce evidence as to the course of dealing not only between Burns and Palmer but between Burns and one Leadam, who farmed the land before the contract between Palmer and Burns was made. There was an objection to this evidence by plaintiff's counsel and defendant's counsel then argued that the evidence was admissible as tending to show an estoppel. He said: "We offer that evidence in support of our proposition of estoppel in this case." After a discussion on the part of the respective counsel as to the admissibility of the evidence, the court said: "I would be inclined to let that testimony in and let it go to the jury for what it is worth and let them determine, under proper instructions, whether it constitutes an estoppel." In light of this record there is obviously no foundation for the argument on the part of the defendant that the trial court had no reason to believe that the defendant was relying on the doctrine of estoppel and should not have instructed upon the law of estoppel.

There was considerable evidence adduced upon the trial relating to certain items in controversy between the plaintiff and Palmer. There were two notes, one for $78 and another for $500, both given by Palmer to Burns. Palmer claimed that these notes had been paid and Burns claimed that they had not been paid and that they constituted indebtedness which he (Burns) was entitled to have paid out of Palmer's share of the grain. Under the evidence the jury might have found either way as to these items, and the court properly submitted the matter to the jury. But there was also a claim on the part of Palmer that incident

to the production of the 1925 crop he had paid $52.66 for seed used, $170.45 for Burns' share of the thresh bill and that he was entitled to $57.44 for hauling Burns' share of the crop to market. In its instructions to the jury the court said:

"But if you find that there was not an estoppel or that Palmer was not an actual agent or ostensible agent to sell the crop, then you will determine *how much half the crop was.* There is no issue on that question—plaintiff would be entitled to one half the crop. .. . . If you find for the plaintiff in this case you will bring in a *verdict for half the crop,* and you will then determine whether or not you will bring in a verdict for the other two items or either of them.

"You will apply the above doctrine of law to all the facts and circumstances in the case and determine the number of bushels that constitute plaintiff's *share of the 1925 crop* on the land described in the lease and also determine in addition thereto what sums of money the tenant, Palmer, was indebted to the plaintiff, and the amount of such indebtedness at the time of the conversion and at the present time."

The two items referred to were doubtless the $500 and the $78 note. Elsewhere in its instructions the court said:

"You will figure up the amount that *his half share of the crop* would be, which is $1,645.24. You may take that down, so you won't have to figure it if you come to that point in the case. You would have to figure that if you bring in a verdict for the plaintiff."

These instructions, as has been indicated, properly left to the jury to determine whether Palmer had or had not paid the $500 and $78 notes; but left out of consideration the items which Palmer claimed to be due him for seed purchased, threshing bill paid and hauling of the grain,—all incident to the production of the 1925 crop. Under the terms of the contract these were all items to be paid by Burns, and in a settlement or adjustment, or in an action, between Palmer and Burns, Palmer was, we think, clearly entitled to be compensated for these items. Baird v. A. L. Johnson Co. 55 N. D. 292, 213 N. W. 359. Whether these amounts had or had not been paid was a matter of dispute but the court's instructions left these claims wholly out of consideration. If the jury found for the plaintiff on the questions of agency and estoppel,—that is, if the jury believed plaintiff's version of the conversation which Burns claimed he had had with the agent of

the defendant elevator company, then the jury could hardly do otherwise than bring in a verdict for the full amount of the one half of the 1925 crop; and if they further believed that Palmer was indebted to the plaintiff in the amount of the $500 note and the $78 note, or either of them, then they would also be required to add that amount to the verdict. Apparently the jury resolved the evidence regarding the $500 note and the $78 note in favor of the defendant; but the jury was not permitted to consider the claims of Palmer for seed grain, threshing bill and hauling the grain. Hence, we have no means of knowing what conclusion the jury might have reached as regards these items or any one of them.

It is undisputed that the defendant purchased the grain from Palmer in good faith and paid him the full value thereof. Hence, Palmer's equitable interest in the grain passed to the defendant and the plaintiff is entitled to recover from the defendant only what he might have recovered from Palmer, i. e., plaintiff is entitled to recover only the amount of his ultimate interest therein under the contract. Wadsworth v. Owens, 17 N. D. 173, 115 N. W. 667; Aronson v. Oppegard, 16 N. D. 595, 114 N. W. 377; State Bank v. Hurley Farmers Elevator Co. 33 N. D. 272, 156 N. W. 921; Stavens v. National Elevator Co. 36 N. D. 9, 161 N. W. 558. See also Baird v. A. L. Johnson Co. supra. In the circumstances it will be necessary to order a new trial unless the plaintiff consents to remit an amount equal to the aggregate of the amounts claimed by Palmer for seed grain, threshing bill, and charges for hauling the grain, together with interest on such items. The plaintiff will therefore be afforded the right to file a statement with the clerk of the district court within twenty days after the return of the remittitur to the effect that he consents that the judgment be reduced in the amount indicated. If the plaintiff files such declaration within the time stated, then the judgment as so reduced will be and is affirmed. If, however, the plaintiff does not file such declaration, then a new trial of the action must be had. The cause will be remanded to the district court for further proceedings conformable to this opinion.

NUESSLE, Ch. J., and BURKE, BURR, and BIRDZELL, JJ., concur.

## On Appellant's Petition for Rehearing.

CHRISTIANSON, J. Defendant has petitioned for a rehearing. In such petition it is urged that the former opinion failed to give due effect to the following defense interposed by the answer:

"If plaintiff had a written agreement with said Palmer as described in the complaint, the same was broken and abandoned by the plaintiff and at no time was a binding and effective contract between them, for that plaintiff failed and neglected to furnish the seed for the crops described in the complaint, and failed and neglected to furnish said Palmer the milch cows and brood sows as provided for in said contract, so that the same could be performed by said Palmer."

Defendant claims that the court should have submitted to the jury whether the plaintiff breached his contract in the particulars thus alleged, and, if so, what amount of damage Palmer sustained by reason of such breach. The question thus urged was not specifically raised in appellant's brief or in the oral argument; and while some reference was made thereto in the motion for judgment notwithstanding the verdict, we felt justified in assuming that the point had been abandoned on appeal. In view of the petition for rehearing, however, we have again examined the record in the case and are wholly agreed that the trial court committed no error in eliminating from the consideration of the jury all questions relating to such alleged breach of contract by the plaintiff. The undisputed evidence shows that the land in controversy was farmed under a written contract between Burns and Palmer; and such contract contains no provision whatever as to Burns furnishing milch cows and brood sows to Palmer. Palmer was, however, permitted to testify to an oral agreement or arrangement to this effect. But leaving wholly on one side all question as to whether the evidence was admissible or, if admissible, established any such agreement, and whether the defendant in this action could assert a breach of such agreement as a defense, we are wholly agreed that there was no evidence from which reasonable men could find that any damages had been sustained by Palmer on account of such breach. If the action had been one by Palmer against Burns for the recovery of damages for the breach of such alleged agreement, a verdict in favor of Palmer could not possibly have been sustained under the evidence in this case. There

was nothing on which such verdict could have been based except conjecture and speculation and verdicts must rest upon evidence and not upon conjecture.

It is also contended that in the former opinion we overlooked an assignment of error predicated upon the admission in evidence of certain scale tickets. The tickets in question were dated in March, 1923 and involved the 1922 crop. They were offered and received in evidence purely as bearing on the manner of the disposition of the 1922 crop and the authority Burns had actually or ostensibly conferred upon Palmer as regards the disposition of such crop. While the admission of the scale tickets was assigned as error, the assignment was supported by little or no argument in the written brief or on the oral argument. In the very nature of the case the scale tickets could have had no bearing except on the question of estoppel. And at the time of their introduction it was clearly indicated that that was the sole purpose for which they were offered.

Before the scale tickets were received in evidence defendant's counsel had cross-examined the plaintiff at length as regards the disposition of the 1922 crop. Later the storage tickets covering the same crop were offered in evidence by the defendant. These storage tickets contained the name of Burns as owner of the grain. The scale tickets also contained his name as owner. Both the plaintiff and Palmer were examined fully as regards the mode of disposition of the 1922 crop. The evidence shows that Palmer hauled the grain and that storage tickets were issued in the name of Burns; that Palmer took the storage tickets to the Morristown State Bank and that Ginther, the managing officer of that bank, indorsed the tickets, "T. H. Burns, by F. Ginther," sold the grain represented thereby, and deposited the proceeds of the sale in Burns's account in the Morristown State Bank. There were no recitals in the scale tickets that in any particular differed from the storage tickets which the defendant itself offered in evidence. We fail to see how the admission of the scale tickets could possibly have affected the verdict and we are agreed that the record presented does not show that any prejudicial error was committed by admitting them in evidence. Rehearing is denied.

NUESSLE, Ch. J., and BURKE, BURR, and BIRDZELL, JJ., concur.